UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARCELLA FANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:04-cv-1010-JDT-TAB |
| ) | |
| LOCKE REYNOLDS LLP, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 22)**

**AND MOTION TO STRIKE (Docket No. 46)**[1]

This matter is before the court on a summary judgment motion filed by the Defendant, Locke Reynolds LLP, an Indianapolis law firm. Locke Reynolds has also filed a motion which asks the court to strike Plaintiff's surreply brief.

Plaintiff, Marcella Fane, was a paralegal with Locke Reynolds from July 9, 2001 through her involuntary termination on August 19, 2003. She has brought suit against Locke Reynolds claiming that she was terminated because of her race, African-American. She also raises issues with respect to her work load and pay relative to other paralegals at Locke Reynolds who are not African-Americans. For the reasons discussed in this entry the court finds that no material questions of fact remain to prevent judgment from being entered in favor of Locke Reynolds.

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

**I.     FACTUAL BACKGROUND**

Fane first applied for a paralegal position with Locke Reynolds in 1996, but was told she needed a four-year degree, which she did not have.  Fane has a one-year paralegal certificate.  She applied again for employment with Locke Reynolds through a placement agency and was hired in 2001, after she had gained paralegal experience with both an environmental law firm and a state agency.  Immediately prior to accepting an annual salary of $36,000 to work at Locke Reynolds, Fane was making $27,500 per year.  Fane accepted the job at Locke Reynolds because of the higher salary and a greater level of responsibility.

Locke Reynolds placed Fane in its toxic/tort and asbestos practice area ("Asbestos Group"), which is overseen by senior partner Michael Bergin.  When first hired, Fane joined two other paralegals that worked within the Asbestos Group, Linda Sears and Melissa Hopper.  Sears was quite senior in status as an Asbestos Group paralegal and was making $43,260 per year.  Hopper was relatively new, had a bachelor's degree in Legal Administration and was making $39,000 per year.  All paralegals in the Asbestos Group reported to Bergin.  Two additional paralegals, Christine Christian and Pamela Badger, were hired subsequent to Fane's arrival and Sears left the firm in January of 2003.  While the Asbestos Group paralegals were cross-trained to allow competence in

various areas, Fane's primary responsibility throughout her tenure was the completion of discovery and drafting of pleadings.

While Fane was employed at Locke Reynolds, the firm used a five point scale to evaluate its paralegals, with one equal to an unsatisfactory rating and five reflecting superior performance. Fane's 2001 written review contained a rating of 3.60, the lowest evaluation of the three paralegals assigned to the Asbestos Group. During the 2002 year she was the subject of a client complaint. The complaint registered by the client was with respect to the manner in which Fane addressed paralegals who worked for the client and national coordinating counsel. It was said that she had used an improper, arrogant tone with the paralegals. Her 2002 evaluation contained a critical reference to Fane's tone of oral and written communication with clients and also indicated that she could be blunt with people at times, leaving those people with a perception of rudeness or condescension on her part. She received a rating of 2.85, considerably below the 4.21 and 4.69 ratings received by the other two Asbestos Group paralegals. Fane believes Bergin and others were more forgiving in their evaluation of other paralegals including Hopper, who Fane opines had equally critical written comments on her reviews but was given a better score.

In May of 2003, the Asbestos Group met to discuss file reorganizations and the processing and completion of pending discovery work. At that meeting Bergin requested that additional work be completed on the pending file reorganizations, to which Fane replied by indicating that the added work would require additional help. Bergin responded by indicating that the four paralegals working in the group at that

point should divide the work between themselves in order to get the job done.  The paralegals did just that, but Fane felt that Melissa Hopper did not pull her weight with respect to the work she was assigned.

As a follow-up to that meeting, Bergin met with Fane a couple days later to discuss having Pamela Badger, one of the newer paralegals, assigned to help Fane with discovery responses.  Fane proposed having both Badger and Christine Christian, another new paralegal, trained to assist with discovery responses.  Her proposal was green-lighted and on July 14, 2003, Fane gave Badger and Christian each four cases that had fallen behind in discovery and needed attention.

On August 14, 2003, Fane sent Badger and Christian an e-mail inquiring about the status of the cases she had given them.  Badger responded via e-mail saying: "I have one draft done that Wade [an Asbestos Group attorney] approved - he told me to work on the others when I could fit them into my schedule.  I have been working on a National Starch production project that had to come first."  Fane replied to Badger's e-mail with one of her own sent to both Christian and Badger.  Her e-mail said: "National Starch may come first, but it takes no one a whole month to draft 4 discovery responses.  When will you have the remaining 3 complete? Thanks."  Badger then responded with an e-mail stating, "You may be right - BUT it took a good 2 weeks to get them back from Wade in the first place and by that time I was knee deep in the document production for National Starch."  Christian chimed in as well, e-mailing: "If you are talking to me, I just informed you that Wade told me to hold off on doing any other discovery responses prior to giving me his approval on my first set.  He has been

unable to review my first set.  If you have a problem with that, take it up with Wade, and try to be less rude about it!"

After receiving a copy of the e-mail exchange, Bergin went to talk to Fane.  After appearing in her doorway, Fane directed him to come in, shut the door and have a seat.  Bergin told Fane that she needed to "hold up" on the way she was speaking to others about work.  After Fane inquired as to what she had done wrong, Bergin told her that the first e-mail she sent to Christian and Badger was acceptable, but the second was inappropriate and the recipients were upset with the way she had handled the situation.  Bergin considered Fane's second e-mail unnecessarily aggressive, hostile and uncalled for in light of the recipient's having taken on the task of assisting her with the discovery response workload.  Fane told Bergin that she considered the e-mail direct but not at all rude.  After Bergin left her office, she went to Christian's office and informed her that the e-mail was not intended to be rude.  To this day Fane refuses to believe that anyone would interpret her e-mail as anything but straightforward and to the point.  Nor does she acknowledge that some might find it inappropriate for her to tell a senior partner at her door to come in, shut the door and have a seat.

Bergin did find Fane's communication with others and attitude toward him unacceptable.  He concluded that her often argumentative communication style was causing a staff disruption and should not be tolerated.  The following Monday, Susan Cline, the attorney who served as liaison to the Management Committee for paralegal matters, met with Fane and gave her an opportunity to explain her side of the situation.  Fane offered her rendition of what occurred and told Cline that the workload in the

Case 1:04-cv-01010-JDT-TAB   Document 48   Filed 03/29/06   Page 6 of 17 PageID #: 445


Asbestos Group was unevenly distributed; however, she did not admit that any of her communications with Bergin or the paralegals were inappropriate or insubordinate. She blamed the others for any perceived problems. Fane's employment was terminated for what Locke Reynolds deemed as insubordinate behavior toward Bergin and unacceptable behavior toward her fellow paralegals.

At the time she was terminated, Fane was making $38,850. Hopper was making $44,500, having received a 3.5% raise on her July 2003 employment anniversary. Christian was earning $45,000 and Badger was hired in at $46,000. Prior to joining Locke Reynolds, Christian had six years of paralegal experience and was making $42,550. Badger had been earning $45,000 prior to her arrival at Locke Reynolds and had three years of experience specifically in asbestos litigation. All paralegals at Locke Reynolds also received an annual bonus equal to $200 per year of service.

Following her termination, Fane filed a charge of discrimination with the Equal Employment Opportunity Commission. In that charge she stated: "I believe that I was discharged because of my race, black, in violation of Title VII of the 1964 Civil Rights Act, as amended." She did not mention in the charge, but did state in response to an EEOC questionnaire, that she believed she was given a larger workload and was paid less than other paralegals in the Asbestos Group, none of whom were African-American. After receiving notice of her right to sue from the EEOC, she filed this lawsuit

alleging that Locke Reynolds discriminated against her in violation of Title VII and in violation of Section 1981 of the Civil Rights Act of 1866.[2]

## II.   SUMMARY JUDGMENT STANDARD & EVIDENTIARY STANDARD

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party.  *See id.* at 255.

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A party moving for summary judgment on a claim on which the nonmovant party bears the burden of proof at trial may discharge its burden by showing, "that is, pointing out," an absence of evidence to support the nonmovant's case.  *Id.* at 325.

---

[2] The same standards governing liability under Title VII apply to § 1981 claims.  *See Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998).

A plaintiff may demonstrate intentional discrimination through either the direct method or indirect method. *Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004) (citing *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). The direct method of proof permits a plaintiff to show, by way of direct or circumstantial evidence, that the adverse job action taken against him was motivated by an impermissible purpose, such as race in Fane's case. *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998)). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes*, 359 F.3d at 504 (internal quotations and citations omitted). Circumstantial evidence of discrimination "must point directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (citing *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).

A plaintiff who lacks direct evidence of discrimination must proceed under the indirect method, familiarly known as the *McDonnell Douglas* burden-shifting test. *Id.* "If the plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its employment action, and in response the plaintiff must prove that the employer's proffered non-discriminatory reason is a pretext for discrimination." *Rhodes*, 359 F.3d at 504 (citing *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002)).

**III.   ANALYSIS**

In order to establish her claim under the indirect method, Fane must first establish: 1) that she is African American, 2) that she was meeting Locke Reynold's legitimate performance expectations, 3) that she suffered an adverse employment action, and 4) that she was treated differently than similarly situated employees who were not members of the protected class.  *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005).  Fane is African-American and there is no issue with respect to the third element, at least with respect to her termination.  However, Locke Reynolds argues that neither the second nor fourth elements have been established by Fane and that she may not pursue a claim of discrimination with regard to her pay or workload because she did not raise those claims in her EEOC charge of discrimination.  Furthermore, Locke Reynolds claims it has a legitimate non-discriminatory reason for terminating Fane, that being her ongoing abrasive communication style, her insubordinate manner with Bergin and the specific way she handled communications with her two paralegal contemporaries regarding their assistance in drafting discovery responses.

The court looks first at the issue of whether Fane may pursue either a claim of discrimination based upon Locke Reynolds's failure to pay her as much as they paid her contemporaries who were not African-American or a claim based upon what she describes as a heavier workload.  Generally, a person claiming discrimination in violation of Title VII is required to first file a charge with the EEOC setting forth the specifics of his or her claim in a manner which gives notice of the claim to the party

being charged with discrimination and allows the agency to investigate and facilitate a resolution if possible. See *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A claimant may not pursue in court a claim which was not raised in their EEOC charge. *Id*. However, the EEOC charge need not include each and every fact that combines to form a basis for a complaint. *Id.* The Seventh Circuit has emphasized that the proper inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Novitsky v. Am. Consulting Eng'rs L.L.C.,* 196 F.3d 699, 701 (7th Cir. 1999)(citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 n.2 (7th Cir. 1985)).

In *Novitsky,* the employer argued that the plaintiff, its former employee, was not allowed to pursue a claim of "failure to accommodate" her religious beliefs, because her EEOC charge contained only a complaint that she was let go because of her age and religion. The employee argued that her claim of failure to accommodate was reasonably related to the claim specifically set forth in her charge. She also claimed to have provided an EEOC staffer with details of the complaints she made to her employer about having to work on a religious holiday in her answers to the EEOC questionnaire, but the staffer did not put such complaints in her charge when it was drafted. *Id.* at 701-702. The Seventh Circuit reasoned that the plaintiff was free to hire an attorney or draft her own charge of discrimination before signing the charge and that she could have asked for the charge to be amended if she was unsatisfied with it during the agency processes. *Id.* at 702. Since the employer was not made aware of the failure to accommodate complaint through the EEOC charge, the court determined that the

former employee was not allowed to pursue the "failure to accommodate" claim in federal court.³  *Id.*  Locke Reynolds relies on *Novitsky* as support for its argument that Fane should not be allowed to pursue her claims of unequal pay and a heavier workload.

The court agrees that *Novitsky* supports a conclusion that Fane is not allowed to pursue her claims of unequal pay and a heavier workload.  Moreover, neither of the claims would survive even if the court did not apply the claim bar analysis of *Novitsky*. Fane's starting pay was negotiated by the third party employment agency, the amount she was paid was commensurate with her educational level, experience and the amount of pay necessary to attract her to Locke Reynolds from a much lower paying position. She was the lowest rated paralegal in the Asbestos Group and consequently received less in terms of raises, but not so much so as to be completely out of synch with what others were receiving.  As to her claim of having a heavier workload, that is purely her

---

³ In a concurring opinion, Judge Rovner wrote:

> We are presented today with a claimant who included one incident in the intake questionnaire that was not included in the charge drafted by the EEOC.  The claimant's counsel was present when she reviewed and signed the charge, and neither she nor her counsel ever requested that the omitted information be included in the charge.  On those facts, we have concluded that her signature on the charge binds her to its contents, and that we will not look beyond the charge.
>
> The majority opinion contains some broad language which purports to limit the complainant to the language of the charge "whether or not the complainant had a lawyer . . . indeed, whether or not she read or understood the charge . . . ." Contrary to the opinion's implications we do not now decide whether an illiterate person or *pro se* person who signs a charge prepared by the EEOC, which leaves out critical information provided by the claimant to the EEOC in the intake questionnaire, would be similarly bound by the charge.

*Novitsky,* 196 F.3d at 703 (Rovner, J., concurring).

subjective opinion and would not amount to an adverse employment action where there is no quantitative or qualitative difference in the terms or conditions of her employment. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744-745 (7th Cir. 2002).

That leaves Fane with her claim that her termination was motivated by racial animus. However, she runs into an immediate problem establishing that she was meeting her employer's legitimate expectations. She had consistently received the lowest evaluation marks of any of the Asbestos Group paralegals and had been previously criticized for the style of communication she employed with clients.[4] The fact that Bergin was displeased enough with Fane's e-mail communications that he decided to pay her a visit in her office is evidence of a failure to meet expectations. That concern, combined with Bergin's reaction to the manner in which Fane addressed him and his issues with her (regardless of whether Fane's manner is judged by others to be straightforward or a bit condescending), demonstrates that she was not meeting his legitimate expectations as the senior partner in the Asbestos Group. Her failure to convey any understanding why her actions and communications might be perceived as curt, aggressive or rude obviously led the management committee liaison, Ms. Cline, to the same conclusion reached by Bergin: Fane's communication style was unacceptable and she did not appear to recognize the problem so that it might be corrected.

---

[4] In fact, the issue of her communications with clients had been of sufficient concern to warrant the firm asking an attorney in the group to more closely monitor and supervise her work to avoid client relation problems.

Fane responds by arguing that her conduct was not discourteous or abusive nor sufficiently egregious to support a termination.  Such an argument does not truly address the issue at hand.  Fane must establish a genuine issue of fact about whether she was meeting the legitimate expectations of Locke Reynolds.  Locke Reynolds clearly expected their paralegals to utilize a manner of communication which was different from the style employed by Fane.  If those expectations were unreasonable or themselves a pretext for discrimination she might have an argument that there is at least a material question of fact with regard to that element of her prima facie case.  *See Brummett v. Lee Enters., Inc.*, 284 F.3d 742, 745 (7th Cir. 2002).  However, there is no evidence of record to support a claim that Locke Reynolds's expectations were unreasonable or a pretense for unlawful discrimination.  Fane's own subjective opinion that Hopper produced less work and was given higher scores despite equally critical written comments cannot save her claim.  "Indeed, if the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed."  *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere,* 83 F.3d 833, 841-842 (7th Cir. 1996).

Fane has a problem as well showing that other similarly situated employees who are not African-American were treated more favorably under similar circumstances.  She claims that Donna West, a legal secretary who worked closely with members of the Asbestos Group, was exceedingly more rude and discourteous than she ever was and was not terminated for her behavior.  Through affidavits, Fane has established that

West engaged in some outrageous behavior, including yelling and screaming obscenities, making threatening comments and bringing wounded birds into the office to keep in her desk. However, Fane has not established that West was similarly situated so as to make the comparison appropriate. In order for another employee to serve as an appropriate comparator under the *McDonnell Douglas* framework, it must be shown that she occupied the same job level, had a similar record and after engaging in similar conduct was treated differently for no legitimate reason. *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 834 (7th Cir. 2005). West was not a paralegal, did not have similar duties and did not report to the same superior.[5]

Fane claims that Badger and Christian, who are similarly situated, also engaged in "the same level and nature of communication" as Fane when they responded to her e-mail. That simply is not supported by the record. No reasonable person could consider their responses as comparable in tone or substance. Furthermore, neither of them had been previously warned or criticized in evaluations with respect to their communication style. In short, neither Badger nor Christian engaged in similar conduct and West is an inappropriate comparator.

Even if Fane was able to make her prima facie showing, she is faced with Locke Reynolds' articulation of a legitimate non-discriminatory reason for terminating her employment that she has not shown to be a pretext. Fane argues, unconvincingly, that

---

[5] Although an insufficiently shallow view of West's treatment might allow it to appear differentially lenient, it is not surprising, when one learns of West's particularly odd conduct, that Locke Reynolds claims to have had information that led it to believe that West was entitled to some accommodation for her conduct under the Americans with Disabilities Act.

there is sufficient circumstantial evidence to find that Locke Reynolds's articulated reason for firing her was pretextual. She points to her lower salary, the firm's rebuffing her first efforts to obtain employment because she did not have a four-year degree and the later withdrawal of that requirement for an applicant who was not African-American and the failure of Locke Reynolds to "rise to the occasion" (whatever that might entail) when she complained of West screaming at her. Fane also refers to an incident where another African-American employee observed an e-mail that contained a racially offensive joke which was sent by a staff management employee to another employee. According to Fane, Locke Reynolds did little to discipline the sender of the e-mail, evidencing a prejudice against African-Americans.

The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, well-considered or fair. *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 435 (7th Cir. 2005). To show pretext, a plaintiff must supply evidence to support a conclusion that the articulated reason for the adverse employment action is a lie or completely lacking in factual basis. *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Fane has not done that here. Her circumstantial evidence is too weak to support such a conclusion.

While it appears to be true that Locke Reynolds, at some point after initially rejecting Fane's employment application, dropped its requirement that paralegals have a four-year degree, they dropped it for everyone, including Fane. The record does not show that the requirement did not exist when she first applied or that she was singled out for any particular reason. The court has already discussed West's behavior and

Fane's salary and would simply add that other paralegals either had greater experience or higher evaluation scores which also supported the salary differential.  Finally, the fact that the discovery of an inappropriate (but totally unrelated) e-mail joke did not result in severe-enough discipline, in Fane's opinion, does not leave an inference that the firm's actions toward Fane were fueled by racial animus.  Rather, the affidavits and other evidence of record supports only a conclusion that Locke Reynolds's decision was rooted in the legitimate belief that Fane had a communication style that offended others, did not recognize that problem and was unwilling to affect a change.  For those reasons, the court has no basis to find that Locke Reynolds's articulated reason for firing Fane was a pretext for unlawful discrimination.  This, in addition to Fane's failure to establish elements two and four of her prima facie case dictate that summary judgment be entered in favor of Locke Reynolds.

On a related note, Fane  filed a surreply brief in connection with Defendant's Motion for Summary Judgment.  Locke Reynolds objected to the filing of such a brief and filed a Motion to Strike, arguing that it had not relied on previously un-cited evidence in its reply brief and therefore the prerequisites under Local Rule 56.1(d) for filing a surreply had not been met.  The court has considered Locke Reynolds's motion and Fane's response to that motion and determined that the motion should be denied.

**IV.     CONCLUSION**

For the reasons discussed in this entry, Defendant's Motion to Strike Surreply (Docket No. 46) is **DENIED**.  Defendant's Motion for Summary Judgment (Docket No. 22) is **GRANTED**.

ALL OF WHICH IS ENTERED this 29th day of March 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Thomas E. Deer
Locke Reynolds LLP
tdeer@locke.com

Susan W. Kline
Baker & Daniels
swkline@bakerd.com

Alan L. McLaughlin
Baker & Daniels
alan.mclaughlin@bakerd.com

Bobby Allen Potters
Potters Law Firm
bpotters@aol.com